Hand-Delivered

FILED
ASHEVILLE, N.C.

FEB 10 2020

U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | CIVIL ACTION NO.: 1:20 cv 42 |
| Plaintiff, | **UNDER SEAL** |
| v. | |
| WINSTON REED INVESTMENTS LLC and MARK N. PYATT, aka DANIEL RANDOLPH, | **Complaint for Injunctive Relief, Restitution, Civil Monetary Penalties, and Other Equitable Relief Under the Commodity Exchange Act** |
| Defendants. | |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I. SUMMARY

1. From at least April 2017 through at least February 2019 ("Relevant Period"), Winston Reed Investments LLC ("WRI"), by and through its principal, Mark N. Pyatt a/k/a Daniel Randolph ("Pyatt") (collectively, "Defendants"), and Pyatt directly, fraudulently solicited and received at least approximately $200,000 from at least nineteen individuals ("pool participants"), who are not eligible contract participants ("ECPs"), as defined in Section 1a(18) of the Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. § 1a(18) (2018). Defendants solicited and received these funds in connection with pooled trades in commodity futures contracts ("futures") and retail foreign exchange transactions ("forex"), among other things. In doing so, Defendants misappropriated most of pool participants' funds for business expenses and personal use, and to make Ponzi-like payments to other pool participants. Defendants also made false and misleading representations to pool participants and issued false reports that

misrepresented trading profits purportedly achieved by Defendants on behalf of pool participants.

2. By virtue of this conduct, and the further conduct described herein, Defendants have violated the following provisions of the Act and the Commission Regulations ("Regulations") promulgated thereunder: Sections 4b(a)(1)(A)-(C), 4b(a)(2)(A)-(C), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6b(a)(2)(A)-(C), 6o(1)(A), (B) (2018); and Regulation 5.2(b)(1)-(3), 17 C.F.R.§ 5.2(b)(1)-(3) (2019).

3. Unless restrained or enjoined by this Court, Defendants will likely continue to engage in the acts and practices alleged in this Complaint, or in similar acts or practices, as described more fully below.

4. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the CFTC brings this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and Commission Regulations, and to enjoin them from engaging in any commodity or forex related activities. In addition, the CFTC seeks civil monetary penalties, restitution, and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement, pre- and post-judgment interest, and such other and further relief as the Court may deem necessary and appropriate.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Sections 2(c)(2)(C) and 6c(a) of the Act, 7 U.S.C. §§ 2(c)(2)(C) and 13a-1(a) (2018), authorizes the Commission to seek injunctive relief against

any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

6. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(a) because Defendants are found in, inhabit, or transact business in this District, or the acts and practices in violation of the Act and Regulations occurred, or are occurring, or are about to occur within this District, among other places.

### III. THE PARTIES

7. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1-26 (2018), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2019).

8. Defendant **Winston Reed Investments LLC** is a limited liability company formed in April 2017 and organized under the laws of North Dakota. Its principal place of business is in Williston, North Dakota. WRI has never been registered with the CFTC in any capacity.

9. Defendant **Mark Nicholas Pyatt a/k/a Daniel Randolph** is a natural person who currently resides in North Dakota. During a portion of the Relevant Period, he resided in Waynesville, North Carolina. He serves as the vice president and investment consultant for, and held a power of attorney on behalf of, WRI. Pyatt has never been registered with the CFTC in any capacity.

## IV. FACTS

### A. The Purpose and Organization of WRI

10. Pyatt established WRI to facilitate his trading of various financial instruments, including futures and forex.

11. Pyatt, on behalf of WRI, solicited prospective pool participants to trade futures and forex through the WRI pool. In more than one solicitation, Pyatt identified himself as "Daniel Randolph" when speaking with prospective pool participants. When prospective pool participants agreed to deposit funds into the WRI pool, Pyatt had the prospective pool participants sign an agreement with WRI. That agreement identified "Daniel Randolph" as WRI's President and Pyatt as its "Vice President, Investment Consultant and POA." Pyatt controlled WRI's day-to-day operations and was responsible for, among other things, trading pool participants' funds.

12. During the Relevant Period, WRI was a CPO as defined in Section 1(a)(11) of the Act, 7 U.S.C. § 1(a)(11) (2018), because WRI engaged in a business that is of the nature of a commodity pool, an investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including futures.

13. Under Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2019), a CPO is defined as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an Eligible Contract Participant ("ECP") as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2018), and that engages in forex.

14. During the Relevant Period, Pyatt was a CTA as defined in Section 1(a)(12) of the Act, 7 U.S.C. § 1(a)(12) (2018), because Pyatt, for compensation or profit, engaged in the business of advising WRI as to value of or the advisability of trading in futures.

15. Under Commission Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1), (2019), a CTA means, in relevant part, any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an ECP in connection with forex.

16. In soliciting pool participants, Defendants made no attempt to determine if they were ECPs. In fact, upon information and belief, most, if not all, of Defendants' pool participants were not ECPs.

**B.   Defendants' Acceptance of Pool Participant Funds**

17. During the Relevant Period, Defendants accepted funds from pool participants, typically in increments of $5,000. Each increment was referred to as a "contract."

18. During the Relevant Period, Defendants accepted at least approximately $200,000 from pool participants for the purpose of trading futures and forex.

19. Pursuant to agreements signed by pool participants, Defendants promised to deposit pool participant funds into one of two accounts at "Chase Bank / First International Bank & Trust." Defendants promised that those funds would then be deposited into an account at TD Ameritrade. Under the agreements, pool participants had the option of depositing funds directly into the TD Ameritrade account.

**C.   Defendants' Representations About Trading and Promised Returns**

20. Pyatt told at least one pool participant that Pyatt managed at least $1,000,000, which Pyatt used to trade futures and some stocks at TD Ameritrade.

21. Pyatt told at least one pool participant that he developed a trading algorithm and that he was a successful trader.

5

22. Pyatt told at least one pool participant that he traded profitably, generating $30,000 profit on a $10,000 placement in six months and $240,000 profit in one year. Pyatt told at least one pool participant that he had generated $130,000 profit on an initial investment of $20,000.

23. The agreement pool participants signed at Pyatt's direction stated that "[t]he low average expected return on investments across the board is 15% per month."

24. Upon information and belief, Pyatt's representations contained in paragraphs 20-23 are false.

## D. Defendants' Representations and Omissions About the Use of Pool Participant Funds

25. The agreement signed by pool participants provided that "all funds are pooled into one account" and "the purpose of trading all funds together is to give us a higher volume to trade with."

26. The agreement also stated that pool participant funds would be used to trade: "I will be trading 'futures' and 'forex' in a day-trading format and will specialize in energy related stocks. Gold, NASDAQ and oil."

27. Under the agreement pool participants signed, WRI charged each participant $300 per month for market analysis. The agreement further provided that the fee for WRI's services would be 10% of all gains.

28. Under the agreement, all pool participant funds were to be used to trade. Based on their interactions with Pyatt, pool participants believed that all of the funds placed with WRI would be traded on their behalf.

29. Pyatt did not tell prospective pool participants that their funds would be used to pay his business and personal expenses.

6

### E. Defendants Used Only a Fraction of Pool Participant Funds To Trade

30. Defendants opened two accounts at TD Ameritrade in April 2017, one futures account and one securities account. These accounts were opened in the name of "Daniel Randolph."

31. As alleged above, Defendants accepted at least approximately $200,000 from pool participants. Those funds were initially deposited into a TD Ameritrade securities account.

32. Defendants did not trade in the TD Ameritrade securities account.

33. During the Relevant Period, Defendants transferred only a fraction of the approximately $200,000 provided by pool participants from the TD Ameritrade securities account into the TD Ameritrade futures account. Transfers into the TD Ameritrade futures account totaled only approximately $13,000.

34. Defendants used the TD Ameritrade futures account to trade various futures contracts between April 2017 and February 2019.

### F. Defendants Misappropriated Pool Participant Funds To Make Periodic Payments to Other Pool Participants and To Pay Business and Personal Expenses

35. Defendants used pool participant funds to make Ponzi-like payments to other participants.

36. Defendants made payments of approximately $36,000 to various pool participants from the TD Ameritrade securities account.

37. As alleged below, for most of the Relevant Period, Defendants were unprofitable trading pool participant funds. To the extent that Defendants' trading generated profits, those profits were not sufficient to sustain the periodic payments to pool participants.

38. Defendants also used pool participant funds to pay business and personal expenses. For example, payments were made from the TD Ameritrade securities account to

7

American Airlines, Best Buy, Eddie Bauer, Pizza Hut, Prime Video, Smokey Mountain Cigars, Starbucks, Uber, Verizon Wireless, Walmart, and Zales Outlet, among others.

### G. Defendants' Trading Was Not Profitable Overall

39. The TD Ameritrade futures account was active between April 2017 and February 2019, a total of twenty-three months.

40. Defendants traded in the TD Ameritrade futures account during only fifteen of those twenty-three months.

41. Defendants' trading during nine of those fifteen months resulted in realized losses totaling approximately $15,081, while trading during the remaining six months resulted in realized gains totaling approximately $1,644.

42. Overall, trading in the TD Ameritrade futures account was cumulatively resulted in a net loss of approximately $13,416.

### H. Defendants Provided Statements to Pool Participants that Did Not Accurately Reflect WRI's Trading Performance

43. Defendants provided monthly reports to pool participants concerning activity in the WRI pool. These reports were typically transmitted to pool participants via a group email.

44. These monthly reports typically referred to substantial profits. For example, Defendants' monthly report for September 2018 stated that trading resulted in a 36% profit for the month, that is, $1,800 profit per "contract." Defendants' monthly report for December 2018 stated that trading resulted in an 18.8% profit, that is, $941 profit per "contract." A third monthly report transmitted by Defendants claimed profits of 86.5%, that is, $4,327 per $5,000 contract, while a fourth claimed profits of 83.9%, that is, $4,195 per $5,000 contract.

45. The monthly reports provided by Defendants to pool participants did not accurately reflect WRI's trading performance.

8

46. Defendants also provided individual updates covering multiple months of account activity to at least two pool participants. According to a report Defendants sent via email to those pool participants, their initial placement of $10,000 yielded net profits of $24,035 in three months, and additional profits of $110,146 on the following six months.

47. The individual updates Defendants provided to pool participants did not accurately reflect WRI's trading performance.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### Count One

### Fraud in Connection with Futures and Forex

**Violations of Section 4b(a)(1)(A)-(C) and (a)(2)(A)-(C) of the Act,
7 U.S.C. § 6b(a)(1)(A)-(C), (a)(2)(A)-(C) (2018), and
Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2019)**

48. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

49. 7 U.S.C. § 6b(a)(1)(A)-(C) makes it unlawful for any person to: (A) cheat or defraud or attempt to cheat or defraud another person; (B) willfully to make a false report or statement to another person; or (C) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with any contract of sale of any commodity in interstate commerce or for future delivery, that is made, or to be made, on or subject to the rules of a designated contract market.

50. 7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful for any person to (A) cheat or defraud or attempt to cheat or defraud another person, (B) willfully to make a false report or statement to another person, or (C) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with forex.

9

51. 17 C.F.R. § 5.2(b)(1)-(3) makes it unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, to (1) cheat or defraud or attempt to cheat or defraud another person, (2) willfully to make a false report or statement to another person, or (3) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with any forex transaction.

52. As set forth above, during the Relevant Period, Defendants violated 7 U.S.C. § 6b(a)(1)(A)-(C) and (a)(2)(A)-(C), and 17 C.F.R. § 5.2(b)(1)-(3) because they, among other things, intentionally or recklessly: (i) misappropriated pool participant funds; (ii) made, caused to be made, and distributed reports or statements to pool participants that contained false information; and (iii) fraudulently solicited pool participants in connection with futures and forex, including the purported trading of futures and forex conducted or to be conducted by Defendants on behalf of pool participants.

53. Each act of misappropriation, misrepresentation or omission of material fact, and issuance of a false report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C) and (a)(2)(A)-(C), and 17 C.F.R. § 5.2(b)(1)-(3).

54. Defendants engaged in the acts and practices alleged above knowingly, willfully, or with reckless disregard for the truth.

55. Pyatt directly and indirectly controlled WRI and did not act in good faith or knowingly induced the acts constituting WRI's violations, and is therefore liable, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), for WRI's violations of 7 U.S.C. § 6b(a)(1)(A)-(C) and (a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

56. Pyatt acted within the course and scope of his employment, agency, or office with WRI. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R.§ 1.2 (2019), WRI is liable as principal for Pyatt's violations of 7 U.S.C. § 6b(a)(1)(A)-(C) and (a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

## Count Two

### Fraud by a Commodity Pool Operator and Commodity Trading Advisor

### Violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B) (2018)

57. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

58. 7 U.S.C. § 6*o*(1)(A) and (B), in relevant part, makes it unlawful for CPOs and CTAs, by use of the mails or any other means of interstate commerce, directly or indirectly, to:

(A) employ any device, scheme, or artifice to defraud any client or pool participant; or

(B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or pool participant.

59. 7 U.S.C. § 6*o*(1)(A) and (B) applies to all CPOs and CTAs, whether registered, required to be registered, or exempted from registration.

60. Section 1(a)(11) of the Act, 7 U.S.C. § 1(a)(11) (2018) defines a CPO, in part, as "any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in commodity interests."

61. 17 C.F.R. § 5.1(d)(1) (2019) defines a CPO as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP and that engages in forex.

11

62. Section 1(a)(12)(A) of the Act, 7 U.S.C. § 1(a)(12)(A) (2018) defines a CTA, in part, as "any person who, for compensation or profit, engages in the business that is of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading" futures.

63. Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1), (2019), defines a CTA, in relevant part, as any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an ECP in connection with forex.

64. As set forth above, during the Relevant Period, WRI acted as a CPO by soliciting, accepting, or receiving funds from pool participants while engaged in a business that is of the nature of an investment trust, syndicate, or other pooled investment vehicle, for the purpose of, among other things, conducting transactions in commodity interests, including futures. In addition, WRI acted as a CPO when it solicited and accepted funds for a pooled investment vehicle from non-ECPs for the purpose of engaging in trading retail forex.

65. Further, Pyatt acted as a CTA when he, for compensation or profit, advised and directed the trading of pool participant funds undertaken by WRI. In addition, Pyatt acted as a CTA when he exercised discretionary trading authority or obtained written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an ECP in connection with forex.

66. As set forth above, WRI, while acting as a CPO, and Pyatt, while acting as a CTA, violated 7 U.S.C. § 6o(1)(A) and (B), because they, among other things, intentionally or recklessly: (i) misappropriated pool participant funds; (ii) made, caused to be made, and distributed reports or statements to pool participants that contained false information; and

(iii) fraudulently solicited pool participants in connection with futures and forex, including the purported trading of futures and forex conducted or to be conducted by Defendants on behalf of pool participants.

67.    Each act of misappropriation, misrepresentation or omission of material fact, and issuance of a false report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6o(1)(A) and/or (B).

68.    Pyatt directly and indirectly controlled WRI and did not act in good faith or knowingly induced the acts constituting WRI's violations, and is therefore liable, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), for WRI's violations of 7 U.S.C. § 6o(1)(A) and/or (B).

69.    Pyatt acted within the course and scope of his employment, agency, or office with WRI. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R.§ 1.2 (2019), WRI is liable as principal for Pyatt violations of 7 U.S.C. § 6o(1)(A) and/or (B).

## VI.    PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers:

(A)    Find that Defendants violated Sections 4b(a)(1)(A)-(C), 4b(a)(2)(A)-(C), and 4o(1)(A) and (B) and of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C),6b(a)(2)(A)-(C), 6o(A), (B) (2018), and Regulations 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2019);

(B)    Enter an order of permanent injunction prohibiting Defendants and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in

13

active concert with them, who receive actual notice of such order by personal service or otherwise, from:

(1) cheating or defrauding another person, willfully making a false report or statement to another person, or willfully deceiving attempting to deceive another person by any means whatsoever in connection with any contract of sale of any commodity in interstate commerce or for future delivery, that is made, or to be made, on or subject to the rules of a designated contract market in violation of 7 U.S.C. § 6b(a)(1)(A)-(C);

(2) cheating or defrauding another person, willfully making a false report or statement to another person, or willfully deceiving attempting to deceive another person by any means whatsoever in connection with any retail forex transaction in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3); and

(3) in connection with a commodity pool, by use of the mails or any other means of interstate commerce, directly or indirectly: employing any device, scheme, or artifice to defraud any client or pool participant; engaging in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or pool participant in violation of 7 U.S.C. § 6o(1)(A) and (B).

(C) Enter an order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them including any successor thereof, from directly or indirectly:

(1) trading on or subject to the rules of any registered entity (as that term is defined in Section 1(a)(40) of the Act, 7 U.S.C. § 1a(40) (2018));

(2) entering into any transaction involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)) for Defendants own personal or proprietary accounts or for any account in which Defendants have a direct or indirect interest;

(3) having any commodity interest traded on Defendants' behalf;

(4) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

14

(5) soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(6) applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided in Regulation 4.41(a)(9), 17 C.F.R. § 4.41(a)(9) (2019);

(7) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or other officer or employee of any person (as that terms is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2018)) registered, exempted from registration or required to be registered with the CFTC, except as provided in 17 C.F.R.§ 4.41(a)(9).

(D) Enter an order directing Defendants, as well as any as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest;

(E) An order directing Defendants, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre- and post-judgment interest;

(F) An order directing Defendants to pay a civil monetary penalty for each violation of the Act of not more than the amount set forth by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114–74, 129 Stat. 584, title VII, Section 701, and promulgated in 17 C.F.R. § 143.8 (2019), plus post-judgment interest;

(G) An order requiring Defendants to pay costs and fees as permitted by

15

28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

(H)     An order providing such other and relief as this Court may deem necessary and appropriate under the circumstances.

Dated: February 10, 2020

                        Respectfully submitted,

                        /s/ James A. Garcia
                        James A. Garcia
                        DC Bar No. 458085

                        Richard A. Glaser
                        NY Bar No. 2404432

                        Attorneys for Plaintiff Commodity Futures Trading Commission
                        Division of Enforcement
                        1155 21st Street, NW
                        Washington, DC 20581
                        Telephone: (202) 418-5362 (Garcia)
                        (202) 418-5358 (Glaser)
                        Fax: (202) 418-5937
                        jgarcia@cftc.gov
                        rglaser@cftc.gov