| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WINSTON REED INVESTMENTS LLC<br>and<br>MARK N. PYATT, aka<br>DANIEL RANDOLPH,<br><br>Defendants. | **ORDER** |

**CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION AND ANCILLARY EQUITABLE RELIEF AGAINST DEFENDANT <u>MARK N. PYATT aka DANIEL RANDOLPH</u>**

## I.  INTRODUCTION

On February 10, 2020, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint (ECF No. 2) against Defendants Winston Reed Investments LLC ("WRI") and Mark N. Pyatt aka Daniel Randolph ("Pyatt") (collectively, "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2020).

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Pyatt without a trial on the merits or any further judicial proceedings, Pyatt:

1. Consents to the entry of this Consent Order for Permanent Injunction, Restitution and Ancillary Equitable Relief Against Defendant Pyatt aka Daniel Randolph ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018);

5. Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

    (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2020), relating to, or arising from, this action;

    (b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Pyatt now or in the future resides outside the jurisdiction of this Court;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Acknowledges that in *USA v. Pyatt*, Case No. 1:20-cr-00016-MOC-WCM (W.D.N.C., Asheville Division), Pyatt pleaded guilty to violating 18 U.S.C. § 1343 (2018), and further acknowledges that in connection with that plea, Pyatt admitted to the facts set forth in the "Factual Basis" (ECF No. 19, entered July 14, 2020), a copy of which is attached as Exhibit A to this Order. Pyatt also admits to all of the findings made in this Consent Order;

11. Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 72 of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

12. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Pyatt in any other proceeding.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A. Findings of Fact**

**The Parties to this Consent Order**

13. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1-26 (2018), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2020).

14. Defendant Mark Nicholas Pyatt aka Daniel Randolph is a natural person currently in custody in the vicinity of Asheville, North Carolina. During a portion of the period from April 2017 to February 2019 ("Relevant Period"), he resided in Waynesville, North Carolina. He served as the vice president and investment consultant for, and held a power of attorney on behalf of, WRI. Pyatt has never been registered with the CFTC in any capacity.

**The Purpose and Organization of WRI**

15. Pyatt established WRI to facilitate his trading of various financial instruments, including futures and forex.

16. Pyatt, on behalf of WRI, solicited prospective pool participants to trade futures and forex through the WRI pool. In more than one solicitation, Pyatt identified himself as "Daniel Randolph" when speaking with prospective pool participants. When prospective pool

participants agreed to deposit funds into the WRI pool, Pyatt had the prospective pool participants sign an agreement with WRI. That agreement identified "Daniel Randolph" as WRI's President and Pyatt as its "Vice President, Investment Consultant and POA." Pyatt controlled WRI's day-to-day operations and was responsible for, among other things, trading pool participants' funds.

17. In soliciting pool participants, Defendants made no attempt to determine if they were Eligible Contract Participants ("ECPs"), as defined in Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi) (2018). In fact, most, if not all, of Defendants' pool participants were not ECPs.

**Defendants' Acceptance of Pool Participant Funds**

18. During the Relevant Period, Defendants accepted funds from pool participants, typically in increments of $5,000. Each increment was referred to as a "contract."

19. During the Relevant Period, Defendants accepted $276,850 from pool participants for the purpose of trading commodity futures contracts ("futures") and retail foreign exchange contracts ("forex").

20. Pursuant to agreements signed by pool participants, Defendants promised to deposit pool participant funds into one of two accounts at "Chase Bank / First International Bank & Trust." Defendants promised that those funds would then be deposited into an account at TD Ameritrade. Under the agreements, pool participants had the option of depositing funds directly into the TD Ameritrade account.

**Defendants' Representations About Trading and Promised Returns**

21. Pyatt told pool participants that he managed at least $1,000,000, which he used to trade futures and some stocks at TD Ameritrade.

22. Pyatt told at least one pool participant that he developed a trading algorithm, and that he was a successful trader.

23. Pyatt also told pool participants that he traded profitably, generating, in one instance $30,000 profit on a $10,000 placement in six months and $240,000 profit in one year, and, in a second instance, $130,000 profit on an initial investment of $20,000.

24. The agreement pool participants signed at Pyatt's direction stated that "[t]he low average expected return on investments across the board is 15% per month."

25. Pyatt representations contained in paragraphs 21-24 were false.

**Defendants' Representations and Omissions About the Use of Pool Participant Funds**

26. The agreement signed by pool participants provided that "all funds are pooled into one account" and "the purpose of trading all funds together is to give us a higher volume to trade with."

27. The agreement also stated that pool participant funds would be used to trade: "[Pyatt] will be trading 'futures' and 'forex' in a day-trading format and will specialize in energy related stocks. Gold, NASDAQ and oil."

28. Under the agreement pool participants signed, WRI charged each participant $300 per month for market analysis. The agreement further provided that the fee for WRI's services would be 10% of all gains.

29. Under the agreement, all pool participant funds were to be used to trade. Based on their interactions with Pyatt, pool participants believed that all of the funds placed with WRI would be traded on their behalf.

30. Pyatt did not tell prospective pool participants that their funds would be used to pay his business and personal expenses.

### Pyatt Used Only a Fraction of Pool Participant Funds To Trade

31. Pyatt opened two accounts at TD Ameritrade in April 2017, one futures account and one securities account. These accounts were opened in the name of "Daniel Randolph."

32. Pyatt accepted $276,850 from pool participants. Most of those funds were initially deposited into a TD Ameritrade securities account.

33. Pyatt did not trade in the TD Ameritrade securities account.

34. During the Relevant Period, Pyatt transferred only a fraction of the $276,850 provided by pool participants from the TD Ameritrade securities account into the TD Ameritrade futures account. Transfers into the TD Ameritrade futures account totaled only $13,416.68.

35. Pyatt used the TD Ameritrade futures account to trade various futures contracts between April 2017 and February 2019.

### Pyatt Misappropriated Pool Participant Funds To Make Periodic Payments to Other Pool Participants and To Pay Business and Personal Expenses

36. Pyatt used pool participant funds to make Ponzi-like payments to other participants.

37. Pyatt made payments of $21,000 to various pool participants from the TD Ameritrade securities account.

38. As detailed below, for most of the Relevant Period, Pyatt was unprofitable trading pool participant funds. To the extent that Pyatt's trading generated profits, those profits were not sufficient to sustain the periodic payments to pool participants.

39. Pyatt also used pool participant funds to pay business and personal expenses. For example, payments were made from the TD Ameritrade securities account to American Airlines, Best Buy, Eddie Bauer, Pizza Hut, Prime Video, Smokey Mountain Cigars, Starbucks, Uber, Verizon Wireless, Walmart, and Zale's Outlet, among others.

### Pyatt's Trading Was Not Profitable Overall

40. The TD Ameritrade futures account was active between April 2017 and February 2019, a total of twenty-three months.

41. Pyatt traded in the TD Ameritrade futures account during only fifteen of those twenty-three months.

42. Trading during nine of those fifteen months resulted in realized losses totaling $15,081.66, while trading during the remaining six months resulted in realized gains totaling $1,644.98.

43. Overall, trading in the TD Ameritrade futures account cumulatively resulted in a net loss of $13,416.68.

### Pyatt Provided Statements to Pool Participants that Did Not Accurately Reflect WRI's Trading Performance

44. Pyatt provided monthly reports to pool participants concerning activity in the WRI pool. These reports were typically transmitted to pool participants via a group email.

45. These monthly reports typically referred to substantial profits. For example, Pyatt's monthly report for September 2018 stated that trading resulted in a 36% profit for the month, that is, $1,800 profit per "contract." Pyatt's monthly report for December 2018 stated that trading resulted in an 18.8% profit, that is, $941 profit per "contract." A third monthly report transmitted by Pyatt claimed profits of 86.5%, that is, $4,327 per $5,000 contract, while a fourth claimed profits of 83.9%, that is, $4,195 per $5,000 contract.

46. The monthly reports provided by Pyatt to pool participants did not accurately reflect WRI's trading performance.

47. Pyatt also provided individual updates covering multiple months of account activity to at least two pool participants. According to a report Pyatt sent via email to those pool

participants, their initial placement of $10,000 yielded net profits of $24,035 in three months, and additional profits of $110,146 on the following six months.

48. The individual updates Pyatt provided to pool participants did not accurately reflect WRI's trading performance.

**B. Conclusions of Law**

**Jurisdiction and Venue**

49. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2018) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). 7 U.S.C. §§ 2(c)(2)(C) and 13a-l(a) (2018) authorize the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

50. Venue properly lies with the Court pursuant to 7 U.S.C. § 13a-1(e) (2018), because Defendants resided in this District, Defendants transacted business in this district, and the acts and practices in violation of the Act occurred within this District.

**Fraud in Connection with Futures and Forex**
**(Violations of Section 4b(a)(1)(A)-(C), 4b(a)(2)(A)-(C) of the Act,**
**7 U.S.C. § 6b(a)(1)(A)-(C), 6b(a)(2)(A)-(C) (2018) and Regulation**
**5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2019))**

51. 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6b(a)(2)(A)-(C) make it unlawful for any person to (A) cheat or defraud or attempt to cheat or defraud another person, (B) willfully to make a false report or statement to another person, or (C) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with any futures or retail forex transaction.

9

52. 17 C.F.R. § 5.2(b)(1)-(3) makes it unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, to (1) cheat or defraud or attempt to cheat or defraud another person, (2) willfully to make a false report or statement to another person, or (3) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with any forex transaction.

53. By the conduct described in paragraphs 15 through 48 above, Pyatt violated 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3) by misappropriating pool participants' funds, by making material misrepresentations with scienter, and by willfully issuing false statements.

**Fraud by a CTA**
**(Violations of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2018))**

54. 7 U.S.C. § 6*o*(1)(A), (B) (2018), in relevant part, makes it unlawful for a Commodity Trading Advisor ("CTA"), by use of the mails or any other means of interstate commerce, directly or indirectly, to: (A) employ any device, scheme, or artifice to defraud any customer; or (B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any customer. "[7 U.S.C. § 6*o*(1)] broadly prohibits fraudulent conduct by a [CTA]" and "applies to all [CTAs] whether registered, required to be registered, or exempted from registration."

55. 7 U.S.C. § 1a(12) (2018) defines a CTA as any person who for compensation or profit, engages in the business of advising others as to the value or advisability of trading in, among other things, futures contracts or forex transactions. Similarly, 17 C.F.R. § 5.1(e)(1) (2019) defines a CTA as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an [ECP] in connection with retail forex transactions."

10
Case 1:20-cv-00042-MOC-WCM   Document 24   Filed 12/21/20   Page 10 of 19

56. 7 U.S.C. § 1a(18)(A)(xi) (2018), in relevant part, defines an ECP to mean an individual "acting for its own account —who has amounts invested on a discretionary basis, the aggregate of which is in excess of—(I) $10,000,000; or (II) $5,000,000 and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." Most, if not all, of the pool participants were not ECPs.

57. By the conduct described in paragraphs 15 through 48 above, Pyatt violated 7 U.S.C. § 6*o*(1) by knowingly or recklessly employing schemes to defraud pool participants and engaging in transactions, practices, and courses of business that operated as a fraud or deceit upon pool participants. More specifically, Pyatt misappropriated pool participants' funds, made material misrepresentations with scienter, and willfully issued false statements.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

58. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Pyatt is permanently restrained, enjoined and prohibited from directly or indirectly:

   a. Cheating or defrauding, or attempting to cheat or defraud other persons; issuing or causing to be issued false reports; and willfully deceiving or attempting to deceive other persons in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made on or subject to the rules of a designated contract market, for or on behalf of any other person in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2018);

b. Cheating or defrauding, or attempting to cheat or defraud other persons; issuing or causing to be issued false reports; and willfully deceiving or attempting to deceive other persons in connection with any order to make, or the making of, any foreign currency transaction that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2018), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2019);

c. Using the mails or other means or instrumentalities of interstate commerce to directly or indirectly employ a device, scheme, or artifice to defraud clients or prospective clients, or engage in transactions, practices, or courses of business which operate as a fraud or deceit upon clients or prospective clients, in violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2018);

59. Pyatt is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020), for his own personal account or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9) (2020).

## V. RESTITUTION

60. Pyatt shall pay restitution in the amount of two hundred fifty-five thousand, eight hundred fifty dollars ($255,850) ("Restitution Obligation").

61. Pyatt is currently the defendant in a criminal action in which he has admitted, among other things, to misconduct that is at issue in this matter, *United States v. Pyatt,* Case No. 1:20-cr-00016-MOC-WCM (W.D.N.C., Asheville Division) ("Criminal Action"). For amounts disbursed to Pyatt's pool participants as a result of satisfaction of any restitution ordered in the Criminal Action, Pyatt shall receive a dollar-for-dollar credit against the Restitution Obligation. Within ten days of disbursement in the Criminal Action to Pyatt's pool participants, Pyatt shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and the Office of Administration, National

Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, copies of the form of payment to those pool participants.

62. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Pyatt's clients, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Pyatt and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

63. Pyatt shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "Pyatt, Mark N. – Settlement/Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies Pyatt and the name and docket number of this proceeding. Pyatt shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

64. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Pyatt's clients identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate.

65. Pyatt shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Pyatt's pool participants to whom the

Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Pyatt shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

66. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Pyatt's pool participants during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

67. The amounts payable to each pool participant shall not limit the ability of any pool participant from proving that a greater amount is owed from Pyatt or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

68. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant of Pyatt who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Pyatt to ensure continued compliance with any provision of this Consent Order and to hold Pyatt in contempt for any violations of any provision of this Consent Order.

69. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Pyatt's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

A.  **Provisions Related to Monetary Sanctions**

70. Partial Satisfaction: Acceptance by the CFTC or the Monitor of any partial payment of Pyatt's Restitution Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

B.  **Cooperation**

71. Pyatt shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in this action, and in any current or future CFTC investigation or action related thereto. Pyatt shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, the subject matter of this action.

## VI. MISCELLANEOUS PROVISIONS

72. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

> Richard Glaser, Deputy Director
> Division of Enforcement
> Commodity Futures Trading Commission
> 1155 21st Street, NW
> Washington, DC 20581

Notice to Pyatt:

> Mark N. Pyatt
> McDowell County Jail
> 593 Spaulding Rd.
> Marion, NC 28752

All such notices to the CFTC shall reference the name and docket number of this action.

73. Change of Address/Phone: Until such time as Pyatt satisfies in full his Restitution Obligation as set forth in this Consent Order, Pyatt shall provide written notice to the CFTC by

certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

74. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

75. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

76. Waiver: The failure of any party to this Consent Order or of any client at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or client at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

77. Waiver of Service, and Acknowledgement: Pyatt waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to the Pyatt of its terms and conditions.

78. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Pyatt to modify or for relief from the terms of this Consent Order.

79. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Pyatt, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Pyatt.

80. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

81. Contempt: Pyatt understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

82. Agreements and Undertakings: Pyatt shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction and Other Equitable Relief against Defendant Mark N. Pyatt* forthwith and without further notice.

Signed: December 21, 2020

Max O. Cogburn Jr.
United States District Judge

CONSENTED TO AND APPROVED BY:

Mark N. Pyatt
McDowell County Jail
593 Spaulding Rd.
Marion, NC 28752

Dated: 0-20-2020

James A. Garcia
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
(202) 418-5362
jgarcia@cftc.gov

Dated: 12 | 10 | 2020